## APPEAL OF ERWIN & WASEY.

Docket No. 2748. Submitted June 25, 1925. Decided October 12, 1925.

> The determination of the Commissioner that the taxpayer had more than a nominal capital will not be disturbed in the absence of evidence that the taxpayer had no invested capital or not more than a nominal capital.

*Elias Mayer* and *Ezra Cohen, Esqs.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the calendar year 1917 in the amount of $10,477.10, arising from the determination of the Commissioner that the taxpayer had more than a nominal capital. Upon ap-

plication by the taxpayer the profits tax was computed under the provisions of section 210 of the Revenue Act of 1917.

### FINDINGS OF FACT.

The taxpayer is an Illinois corporation with principal office at Chicago, and is engaged in business as an advertising agency. The company was organized in 1914, under the name of Wasey & Jefferson Co., by Louis R. Wasey and W. T. Jefferson, who, for many years prior to that time, had been employed by another advertising agency. The original capital stock was $25,000, divided into 250 shares of the par value of $100 each, and was held equally by Wasey and Jefferson. On November 11, 1914, the capital stock was increased to $50,000. On February 8, 1915, Charles R. Erwin, for many years employed by another advertising company, purchased 125 shares of the stock of the taxpayer, and became its president. The name of the company was thereupon changed to Erwin, Wasey & Jefferson. On September 25, 1915, the name of the company was again changed to Erwin & Wasey.

On February 16, 1916, the capital stock was increased to $100,000, and on May 8, 1917, to $103,000. The capital stock outstanding at the end of the taxable year 1917 was owned as follows: C. R. Erwin, 545 shares; L. R. Wasey, 355 shares; G. P. Wood, 50 shares; A. H. Kubner, 50 shares; C. M. Langan, 25 shares; H. M. Bourne, 5 shares; total, 1,030 shares. The minority stockholders were certain employees to whom stock had been issued under a written agreement which provided for payment therefor out of dividends. The stockholders throughout the taxable year were regularly and actively engaged in the affairs of, and devoted their entire time to, the business of the corporation.

All of the accounts of advertisers were procured by Erwin and Wasey, the principal stockholders. Upon the receipt of an advertising account, either Erwin or Wasey, or both together, would make a study and a detailed analysis of the advertiser's business, its potentialities, present and past market, and competition, to determine upon the advisability and the probable success of an advertising campaign. Upon the completion of the investigation and analysis, specimen advertising was prepared and submitted to the advertiser, and upon acceptance it was prepared in final form and placed with the publications acceptable to the advertiser after a conference with Erwin and Wasey. Advertising space was reserved by the taxpayer in the name of the advertiser and could not be transferred to any other advertiser or used by taxpayer in any manner other than to insert therein the advertisement of the specified advertiser. Upon acceptance by the client of a specific advertisement, taxpayer pro-

cured proper plates, which, together with an order for the appearance of the advertisement, was sent to the publications.

All space contracted for in magazines, mail-order, agricultural, and religious publications was billed to the client by the taxpayer at publishers' regular rates, and publishers' cash discounts allowed the taxpayer on the net cost to it were allowed the advertiser when invoices rendered were paid as specified therein.

All space contracted for in trade, class, and medical publications was billed to the advertiser at the net cost to the taxpayer plus 15 per cent service charge, and publishers' cash discounts on the net cost to taxpayer were allowed when invoices rendered were paid as specified therein. All space contracted for in newspapers was billed to the advertiser at net cost to taxpayer plus 15 per cent service charge, and 1 per cent discount on the net cost to taxpayer was allowed when invoices rendered were paid as therein specified.

When the net cost of space used in newspapers ran less than 15 cents per inch, taxpayer's service charge was 25 per cent and no cash discount was allowed.

All bulletin and poster showings contracted for through taxpayer were billed to the client at regular bulletin and poster rates.

Should the client not use the total space which he had authorized taxpayer to contract for with publishers, thus causing a higher rate than he had been billed, the taxpayer billed said client the difference between the rate contracted for and the rate earned on space used.

All illustrations, typesetting, printing, lithographing, engraving, electros, matrices, stereotypes, or other mechanical work, were billed to the advertiser at cost to taxpayer plus 15 per cent service charge. All mail and express charges in forwarding plates and matrices to publications were billed to the advertiser at actual cost.

For all space used taxpayer rendered bills monthly, such bills being subject to prompt cash payment as indicated upon invoices. Material bills were rendered throughout the month as the different operations were completed, and were subject to payment within 15 days from date without discount. It was a part of the taxpayer's policy to give the advertiser free access to any records or entries that in any way might properly concern him. Every book, bill, paper, or order in taxpayer's office which pertained to the advertiser's business was subject to his inspection at any time.

Advertisers were required to pay the taxpayer for space used before the taxpayer was required to pay the publisher.

The departments of the taxpayer's business and the number of employees therein were as follows:

| Department: | Number of employees. | Department: | Number of employees. |
|---|---|---|---|
| Art | 4 | Stenographic | 19 |
| Copy | 15 | Billing | 9 |
| Service | 5 | Checking | 28 |
| Service detail | 16 | Shipping | 32 |
| Rate | 6 | Miscellaneous | 11 |
| Production | 10. | Executive | 3 |
| Replacing | 4 | | |

Salaries in excess of $5,000 paid to employees during the year were as follows:

| | |
|---|---|
| C. R. Erwin, president and treasurer | $38, 689. 56 |
| John H. Dunham, vice president | 14, 000. 00 |
| L. R. Wasey, secretary and first vice president | 19, 555. 05 |
| G. P. Wood, vice president | 13, 000. 00 |
| D. E. Brundage, copy writer | 10, 099. 84 |
| A. H. Kubner, copy writer | 8, 450. 00 |
| L. R. Maxwell, assistant | 8, 708. 32 |
| Myron C. Perley, head art department | 10, 057. 53 |
| W. O. Millinger, space buyer | 8, 200. 00 |
| Garnet Warren, copy writer | 7, 800. 00 |
| C. W. Jones, service man | 5, 700. 00 |
| Walter Buchen, copy writer | 5, 649. 92 |
| H. M. Bourne, copy writer | 7, 537. 50 |
| C. M. Langan, head copy department | 5, 299. 92 |

The balance sheets at the beginning and end of the year 1917 were as follows:

*January 1, 1917.*

Resources:

| | | |
|---|---|---|
| Advertisers' ledger | $67, 696. 42 | |
| Accounts receivable | 6, 512. 39 | |
| Bills receivable | 14, 600. 00 | |
| Publishers' cash discount inventory | 653. 78 | |
| Furniture and fixtures | 12, 852. 12 | |
| Art and production suspense | 162. 56 | |
| Bank account and cash | 11, 396. 87 | |
| Treasury stock | 50, 000. 00 | |
| | | $163, 874. 14 |
| Liabilities over assets | | 12, 542. 30 |
| | | 176, 416. 44 |

Liabilities:

| | | |
|---|---|---|
| Material accounts payable | $16, 489. 74 | |
| Publishers' accounts payable | 30, 487. 20 | |
| Miscellaneous accounts payable | 24, 550. 20 | |
| Special service account | 1, 305. 30 | |
| Advertisers' adjustments | 2, 584. 00 | |
| Publishers' adjustments | 1, 000. 00 | |
| Capital stock | 100, 000. 00 | |
| | | 176, 416. 44 |

*December 31, 1917.*

Resources:
    Advertisers' ledger _____ $138,503.23
    Personal accounts receivable _____ 11,779.10
    Bills receivable _____ 15,700.00
    Liberty loan bonds _____ 1,533.81
    Publishers' cash discount inventory _____ 383.28
    Furniture and fixtures _____ 11,296.67
    Art and production suspense _____ 1,374.41
    Bank account and cash _____ 29,274.07
                                                          _____ $209,844.57
Liabilties:
    Material accounts payable _____ $10,747.95
    Publishers' accounts payable _____ 21,633.14
    Miscellaneous accounts payable _____ 3,917.08
    Advertisers' adjustments _____ 1,622.30
    Publishers' adjustments _____ 964.00
    Advertisers' cash discount adjustments _____ 10,507.45
    Special service account _____ 4,059.84
    Capital stock _____ 103,000.00
    Reserve for the depreciation of furniture and
        fixtures _____ 3,389.00
    Doubtful account reserve _____ 2,904.93
                                                          _____ 162,745.69

    Balance to credit of profit and loss _____ 47,098.88
                                                                      ============
                                                                       209,844.57

The gross income and deductions shown in the return filed for the year 1917 were as follows:

Gross income from operations _____ $427,509.26
Interest _____ 1,724.26
                                                             _____
    Total gross income _____ $429,233.52
Deductions:
    Salaries of officers _____ $49,499.92
    Labor and wages _____ 214,920.07
    Rent _____ 13,250.14
    Traveling expense _____ 21,660.58
    Light _____ 1,707.87
    Legal expense _____ 2,000.00
    Special service expense _____ 13,035.57
    Miscellaneous _____ 32,687.53
    Losses sustained, charged off _____ 3,198.35
    Depreciation _____ 3,389.00
    Interest paid _____ 2,331.82
    Taxes paid _____ 53.49
                                                          _____ 357,834.34

    Net income _____ 71,399.18

Upon audit of taxpayer's books the Commissioner determined a net income of $78,680.15, which is not disputed by the taxpayer.

During the year 1917 taxpayer borrowed money as follows:

| | | | |
|---|---|---|---|
| May 12 | $25,000 | Sept. 15 | $25,000 |
| May 18 | 50,000 | Sept. 17 | 25,000 |
| July 25 | 25,000 | Oct. 22 | 25,000 |
| Sept. 8 | 25,000 | Nov. 27 | 25,000 |

DECISION.

The determination of the Commissioner is approved.

OPINION.

LITTLETON: Section 209 of the Revenue Act of 1917 provides:

SEC. 209. That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this Act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction.

At January 1, 1917, taxpayer had outstanding capital stock of $100,000, which was increased on May 8, 1917, to $103,000. Taxpayer alleged in its petition that the Commissioner was in error in refusing to compute its profits tax under the provisions of section 209; also, that he erred in his computation of the tax under section 210. No evidence whatever was submitted by the taxpayer proving that it had no invested capital, or not more than a nominal capital during the taxable year, nor was any evidence submitted tending to show that the Commissioner's computation of the profits tax under section 210 was erroneous. We are not warranted, in the absence of such evidence, in rejecting the Commissioner's finding that taxpayer had more than a nominal capital during the taxable year, or his computation of the tax under the provisions of section 210.